| | |
|---|---|
| Felipe Donald Aguinaga Castellon,<br><br>                            Petitioner,<br><br>                              -v-<br><br>John Doe, *in his/her official capacity as Warden, U.S. Courthouse, 200 Federal Plaza, Central Islip, New York 11722*; Judith Almodovar, *in her official capacity as Acting New York Field Office Director, U.S. Immigration & Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary, U.S. Department of Homeland Security*; Todd M. Lyons, *in his official capacity as Acting Director of Immigration & Customs Enforcement*; Pamela Bondi, *in her official capacity as Attorney General, U.S. Department of Justice*,<br><br>                            Respondents. | 2:26-cv-647<br>(NJC) |

**MEMORANDUM AND ORDER**

On February 5, 2026, Felipe Donald Aguinaga Castellon filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2243 to challenge the lawfulness of his detention by Immigration and Customs Enforcement ("ICE"). (Pet, ECF No. 1.) The Petition argues that ICE has detained Mr. Aguinaga Castellon without any notice, any opportunity to be heard, or any individualized assessment regarding whether he posed a flight or public safety risk, in violation of his rights to procedural and substantive due process under the Fifth Amendment to the U.S. Constitution. The Petition asks the Court to assume jurisdiction and provide the following relief: (1) a writ of habeas corpus directing Respondents to provide Mr. Aguinaga Castellon's immediate release from custody, or in the alternative, a bond hearing; (2) attorneys' fees and

costs under the Equal Access to Justice Act; and (3) any other order this Court deems just and proper. (Petition at 8–9.)[1] For the reasons explained below, the Petition is GRANTED in part.

Respondents are government officials named in their official capacities: (1) John Doe, in his/her official capacity as Warden, U.S. Courthouse, 200 Federal Plaza, Central Islip, New York 11722 (the "Central Islip Hold Room"); (2) Judith Almodovar, in her official capacity as Acting New York Field Office Director, U.S. Immigration & Customs Enforcement; (3) Kristi Noem, in her official capacity as Secretary, U.S. Department of Homeland Security ("DHS"); (4) Todd M. Lyons, in his official capacity as Acting Director of Immigration & Customs Enforcement; (5) Pamela Bondi, in her official capacity as Attorney General, U.S. Department of Justice. Respondents oppose the Petition.[2]

---

[1] The Petition also seeks an order prohibiting Mr. Aguinaga Castellon's transfer outside of New York. (Pet. at 8.) The same day he filed the Petition, Mr. Aguinaga Castellon also filed a Motion for an Order to Show Cause requiring Respondents to show cause why the Petition should not be granted within three days. (ECF No. 3.) The Court has effectively granted such relief through the issuance of a February 5, 2026 Order to Show Cause, which required Respondents to respond to the Petition by February 6, 2026, and prohibited Respondents from transferring Mr. Aguinaga Castellon outside of the Eastern District of New York, Southern District of New York, and District of New Jersey. (ECF No. 4.)

[2] The Petition names as a Respondent the John Doe Warden of the ICE facility located in the Alfonse D'Amato U.S. Courthouse, which is known as the "Central Islip Hold Room," because ICE first transported Mr. Aguinaga Castellon to this facility after his arrest. Respondents' February 6, 2026 letter indicates that immediately after arresting him at around 7:30 a.m. on February 5, 2026, ICE transported Mr. Aguinaga Castellon first to the Central Islip Hold Room and then, at around 7:05 p.m., to the Nassau County Jail, where he remains detained. (Declaration of Mincheol So ("So Decl.") ¶ 9, ECF No. 11.) There is no dispute that Mr. Aguinaga Castellon was detained in the Central Islip Hold Room at the time the Petition was filed at 3:39 p.m. (*See* ECF No. 1.) Although counsel for the government maintains that there is no Warden of the Central Islip Hold Room, Respondents do not challenge the Petition on the basis of any purported failure to name Mr. Aguinaga Castellon's immediate custodian, and such arguments are therefore waived. *See Skaftouros v. United States*, 667 F.3d 144, 146 n.1 (2d Cir. 2011) (finding that Respondents waived any opposition to the Petition on the basis that it names the United States rather than a specific custodian); *Gooden v. Gonzales*, 162 F. App'x 28, 29 (2d Cir. 2005) ("Because the immediate-custodian and territorial-jurisdiction rules are like personal jurisdiction or venue rules, objections to the filing of petitions based on those grounds can be

Respondents "have no objection to this Court deciding the petition on the papers in lieu of a hearing," and confirmed during a February 7, 2026 teleconference with the Court they have provided all records material to their opposition to the Petition. (Response to Order to Show Cause ("Opposition"), ECF No. 10 at 3; Min. Entry, Feb. 7, 2026.) They rely on and incorporate by reference the arguments they made to this Court in response to a habeas petition by another ICE detainee in *Rodriguez-Acurio v. Almodovar*, No. 25-cv-6065 (E.D.N.Y.). (ECF No. 10 at 1.) Relying on those arguments, Respondents contend here that ICE's detention of Mr. Aguinaga Castellon falls under 8 U.S.C. § 1225(b)(2) ("Section 1225(b)(2)"), which governs the mandatory detention of certain noncitizens who are "seeking admission" to the United States. (*Id.*) According to Respondents, Section 1225(b)(2) requires Mr. Aguinaga Castellon's detention, and he has no right to any additional notice or opportunity to be heard under the Due Process Clause. Respondents contend that any noncitizen who entered the United States without authorization at any time in the past is subject to mandatory detention under Section 1225(b)(2), notwithstanding the fact that they have been residing in the interior of the country for months, if not years.

The Respondents are incorrect for the reasons explained by this Court in *Rodriguez-Acurio v. Almodovar*, __ F. Supp. 3d __, No. 25-cv-6065, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025), *appeal docketed*, No. 26-219 (2d. Cir. Feb. 2, 2026). This Court's decision in *Rodriguez-Acurio* is incorporated by reference in its entirety in this Order.

Detention under Section 1225(b)(2) only applies to noncitizens who, among other things, are "seeking admission" to the United States. *Id.* at *22. Here, Mr. Aguinaga Castellon is not

---

waived by the Government.") (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 452 (2004) (Kennedy, J., concurring)).

"seeking admission" because he clearly is not presenting himself at the border and was not recently apprehended just after entering this country. Rather, at the time that ICE detained him on February 5, 2026, Mr. Aguinaga Castellon had been living in the interior of the United States for 21 years since a supervisory Border Patrol agent ordered him released on his own recognizance on February 4, 2005. (*See* Declaration of Mincheol So ("So Decl.") Ex. B ("Form I-286"), ECF No. 11 at 9.)

The Respondents offer no new arguments to support their position in *Rodriguez-Acurio* that *any* non-citizen encountered by ICE in the interior of the United States is subject to mandatory detention under Section 1225(b)(2). (*See* Opposition at 1–3.) The vast majority of courts throughout this District, Circuit, and even the country have rejected Respondents' expansive interpretation of Section 1225(b)(2). *See Barco Mercado v. Francis*, __ F. Supp. 3d __, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("[T]he administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed—has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").

The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal.[3] The Seventh Circuit recently suggested that Section 1225(b)(2)

---

[3] *See, e.g.*, *Cunha v. Moniz*, 6:25-cv-6532 (W.D.N.Y. Nov. 25, 2025), *appeal docketed,* No. 25-3141 (2d. Cir. Dec. 12, 2025); *Chen v. Almodovar*, 1:25-cv-8350 (S.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3169 (2d. Cir. Dec. 17, 2025); *Candido v. Bondi*, No. 1:25-cv-867 (W.D.N.Y. Dec. 4, 2025), *appeal docketed*, No. 25-3159 (2d. Cir. Dec. 17, 2025).

4

does not apply to noncitizens who are already residing in the United States. *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).[4] Yesterday, the Fifth Circuit reached the opposition conclusion. *Buenrostro-Mendez v. Bondi*, No. 25-20496 (5th Cir. Feb. 6, 2026).

This Court has conducted its own careful assessment of the law and the facts. In the absence of Second Circuit precedent to the contrary, this Court continues to conclude, as set forth in detail in *Rodriguez-Acurio*, that Respondents' position that Section 1225(b)(2) requires the detention of a non-citizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text.

Accordingly, ICE's detention of Mr. Aguinaga Castellon is governed by the discretionary detention framework set forth in a different provision of the Immigration and Nationality Act, 8 U.S.C. § 1226(a). For the reasons explained in *Rodriguez-Acurio*, which are incorporated by reference here, Mr. Aguinaga Castellon has a liberty interest in being free from detention that is afforded procedural due process protection, notwithstanding Respondents' invocation of *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and other cases. *See* Opposition at 1; *see also Rodriguez-Acurio*, 2025 WL 3314420, at *25–27 (finding that

---

[4] In *Castanon-Nava*, the Seventh Circuit reasoned:

> [T]he mandatory detention provision upon which Defendants rely, limits its scope to an "applicant for admission" who is "seeking admission," § 1225(b)(2)(A). Put another way, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c)."

161 F.4th at 1061 (emphasis in original, quoting *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018)).

5

petitioner's situation is distinguishable from *Thuraissigiam* and that petitioner has a liberty interest that is afforded procedural due process protection).[5] ICE's detention of Mr. Aguinaga Castellon without notice and opportunity to be heard infringes on that liberty interest and triggers the right to procedural due process.

The balancing test set forth in *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976), applies to procedural due process claims and requires this Court to consider: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Applying this balancing test, ICE's detention of Mr. Aguinaga Castellon since February 5, 2026, violates his Fifth Amendment rights to procedural due process for the same reasons as those set forth in *Rodriguez-Acurio*.

Here, ICE's detention of Mr. Aguinaga Castellon without any notice or opportunity to be heard infringes on "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). Moreover, there is a high risk of erroneous deprivation through the procedures used to detain him because Respondents failed to provide *any* notice or any opportunity to be heard before a Department of Homeland Security officer or immigration judge before ICE detained him on February 5, 2026. Finally, Respondents fail to address any of the *Matthews v. Eldridge* factors, much less any government interests advanced by ICE's detention of Mr. Aguinaga Castellon without notice or an opportunity to be heard. Although the Attorney General may have a legitimate government

---

[5] Although the Respondents do not discuss *Thuraissigiam* in any way, because they incorporate their legal brief filed in opposition to the petition in *Rodriguez-Acurio*, this Court assumes they seek to rely on it.

interest in ensuring the appearance of noncitizens at immigration proceedings and preventing danger to the community, nothing in the record before this Court suggests that Mr. Aguinaga Castellon poses a risk of danger or flight. And of course, no one at DHS—whether at ICE or a different DHS subdivision—made any individualized determination that Mr. Aguinaga Castellon poses a risk of danger or flight prior to ICE's arrest and detention of him on February 5, 2026.

The Court makes the following factual findings pertinent to the analysis of the *Mathews v. Eldrige* factors here. Respondents rely on the declaration of ICE Deportation Officer Mincheol So, which includes hearsay statements based not on personal knowledge, but on information gathered from unidentified sources and persons. (*See* So Decl. ¶ 2.) However, the factual record fails to support any suggestion that Mr. Aguinaga Castellon poses a public safety or flight risk— or that anyone at DHS or ICE made such a determination prior to detaining Mr. Aguinaga Castellon on February 5, 2026.

As a threshold matter, Mr. Aguinaga Castellon has absolutely no criminal record whatsoever, and the Respondents do not even argue that he does. Moreover, Mr. Aguinaga Castellon has never failed to appear at an immigration court proceeding or any ICE supervision appointments. Indeed, the record reflects that no removal proceedings were *ever* initiated against Mr. Aguinaga Castellon prior to his February 5, 2026 arrest by ICE. Attached to the So Declaration is a February 4, 2005 Notice to Appear issued by a supervisory Border Patrol agent, which required him to appear in immigration court in San Antonio, Texas, on March 14, 2005. (So Decl. ¶ 5; *Id*., Ex. A, ECF No. 11 at 5–7.) However, So concedes that this Notice to Appear "*was not filed* with the Executive Officer of Immigration Review ("EOIR") so removal proceedings against Petitioner *did not* commence in 2005." (*Id*. ¶ 7 (emphasis added).) Only *after* ICE officers arrested and detained Mr. Aguinaga Castellon on February 5, 2026, did ICE

7

serve him with another Notice to Appear, which now requires him to appear in immigration court in New York, New York on February 16, 2026. (*Id.* ¶ 9; *id.*, Ex. D, ECF No. 11 at 13–16.) Moreover, Respondents fail to allege, much less show, that Mr. Aguinaga Castellon was ever notified of any check-in or supervision dates with ICE or any other government agency, or that he failed to appear at any such appointments. Accordingly, the record reflects that Mr. Aguinaga Castellon was released on his own recognizance in 2005 and has never failed to appear at any immigration court date or supervision appointment in his more than 21-year residence in the United States.

Not only does Mr. Aguinaga Castellon pose no safety or flight risk, nothing in the record suggests that a DHS officer made *any* individualized determination that Mr. Aguinaga Castellon presented a risk of danger or flight prior to ICE's arrest and detention of him on February 5, 2026. Rather, So sets forth hearsay that unnamed ICE officers conducted a traffic stop of Mr. Aguinaga Castellon in Copiague, New York, at around 7:00 a.m. on February 5, 2026, on the basis that he purportedly "matched the description of a targeted suspect." (So Decl. ¶ 8.) So fails to provide the description of the target that agents were looking for, thereby precluding a determination that ICE officers even had a lawful basis for initially stopping Mr. Aguinaga Castellon. Nor does So identify the source of this hearsay. (*See id.* ¶ 2 (acknowledging that statements in the declaration are based on "personal knowledge, review of ICE/DHS administrative and electronic records maintained in the ordinary course of business and consultation with my colleagues" without specifying which facts are based unnamed sources and records as opposed to personal knowledge in the declaration).) So further asserts that *after* stopping Mr. Aguinaga Castellon's vehicle, ICE officers conducted a search of ICE's database and discovered that Mr. Aguinaga Castellon "was a citizen and national of Nicaragua with no

lawful status in the United States." (*Id*. ¶ 8.) Only after obtaining that information, ICE officers conducted a warrantless arrest of Mr. Aguinaga Castellon. (*Id*. ¶ 9.) ICE officers then transported Mr. Castellon to the Central Islip Hold Room, where they served him with a Form I-200 Warrant, the face of which plainly identifies "Central Islip" as the location where the warrant was served on Mr. Aguinaga Castellon—not Copiague, where ICE officers arrested him. (*Id*., Ex. C, ECF No. 11 at 11.)

Thus, the record establishes that ICE officers only learned that Mr. Aguinaga Castellon was a person who had entered the United States without authorization *after* they conducted the traffic stop that led to his warrantless arrest. These facts underscore that ICE's warrantless arrest and detention of Mr. Aguinaga Castellon is solely based on Respondents' expansive interpretation of Section 1225(b)(2) as a statute that requires the detention of *any* non-citizen apprehended anywhere in the interior of the United States regardless of their continuous residence in this country for months, if not years.

Accordingly, weighing all of the *Mathews v. Eldridge* factors—the significant liberty interest at stake, the high risk of erroneous deprivation, and Respondents' failure to demonstrate that Mr. Aguinaga Castellon's detention was required to advance any legitimate government interest in preventing danger to the community or ensuring appearance at removal proceedings—Respondents' detention of Mr. Aguinaga Castellon with no notice or opportunity to be heard, much less a pre-deprivation, individualized determination by a DHS officer that he poses a safety or flight risk, violates his Fifth Amendment rights to procedural due process. Thus, ICE's detention of Mr. Aguinaga Castellon was unlawful from its inception, notwithstanding Respondents' efforts at post-hoc rationalization based on its expansive interpretation of Section

1225(b)(2).[6] *See Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 486 (S.D.N.Y. 2025) ("The Court cannot credit Respondents' new position as to the basis for [petitioner's] detention, which was adopted post hoc and raised for the first time in this litigation."); *Rueda Torres v. Francis*, No. 25-cv-8408, 2025 WL 3168759 (S.D.N.Y., 2025 Nov. 13, 2025) (slip copy) (same).

Upon finding a constitutional violation, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice require." 28 U.S.C §§ 2241(a), 2243. Release from detention is the "typical remedy" for "unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). In *Rodriguez-Acurio*, this Court provided the legal basis for ordering release from ICE detention as well as limited injunctive relief enjoining the Respondents from invoking Section 1225(b) as the basis for subjecting a non-citizen habeas petitioner to mandatory detention, absent a change in relevant circumstances. *See Rodriguez-Acurio*, 2025 WL 3314420, at *31–32.

For those same reasons, in this action, "dispos[ing] of the matter as law and justice require," 28 U.S.C. § 2243, necessitates both the immediate release of Mr. Aguinaga Castellon from ICE custody and narrow injunctive relief guarding against re-detention in violation of this Court's determination that Mr. Aguinaga Castellon is not subject to mandatory detention under Section 1225(b)(2). As in *Rodriguez-Acurio*, the limited grant of injunctive relief to guard

---

[6] Although Respondents do not explicitly invoke 8 U.S.C. § 1225(b)(1) as the basis for ICE's detention of Mr. Aguinaga Castellon, that provision is plainly inapplicable him. Mr. Aguinaga Castellon is not subject to mandatory detention pending expedited removal as an "arriving alien" under Section 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420, at *19. Nor do Respondents even argue, much less show, that he falls within any category of non-citizens who are designated by the Attorney General or their delegate as eligible for mandatory detention pending expedited removal under the statute's Designation Provision, 8 U.S.C § 1225(b)(1)(A)(iii). *See id.* at *15. Accordingly, ICE's detention of Mr. Aguinaga Castellon since February 5, 2026, is pursuant to the discretionary detention scheme of Section 1226(a), not the mandatory detention scheme of either Section 1225(b)(2) or Section 1225(b)(1).

against re-detention by ICE without a bond hearing on the basis of Section 1225(b)(2) absent a change in relevant circumstances falls within the "core of habeas," *Thuraissigiam*, 591 U.S. at 119, because it is necessary to ensure that the release of Mr. Aguinaga Castellon is not rendered meaningless.

## CONCLUSION

Accordingly, for all the reasons explained in this Memorandum and Order and set forth in this Court's prior decision in *Rodriguez-Acurio*, the Petition is granted in part. ICE's detention of Mr. Aguinaga Castellon since February 5, 2026, was unlawful at its inception as it is based on Respondents' position that any noncitizen who entered the United States without authorization at any time in the past is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). Respondents must release Mr. Aguinaga Castellon immediately, coordinate his release information with Petitioner's counsel, and confirm their compliance with these directives in a filing on the docket by the end of today.[7] Additionally, pending the issuance of any final removal order against Mr. Aguinaga Castellon, Respondents are enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b)(2), absent a change in relevant circumstances consistent with this Order.

At this time, the Court reserves ruling on the request for attorneys' fees and costs under the Equal Access to Justice Act set forth in the Petition. Mr. Aguinaga Castellon may file an application for attorneys' fees and costs incurred in pursuing this action by May 8, 2026.

The Court concludes that the other arguments set forth in the Petition for granting Mr. Aguinaga Castellon the requested relief of immediate release, including arguments that the

---

[7] The pending hearing on the Petition on February 9, 2026 will not be adjourned until Respondents have demonstrated compliance with this Memorandum and Order.

11

detention violates the Fifth Amendment right to substantive due process, are now moot and unnecessary to resolve. Similarly, the requested alternative relief in the form of a bail hearing before this Court is also dismissed as moot.

Dated: Central Islip, New York
      February 7, 2026

                                    */s/ Nusrat J. Choudhury*
                                    NUSRAT J. CHOUDHURY
                                    United States District Judge